**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

JAMES W. MILLNER,

Plaintiff,

v.

MARTIN BITER, et al.,

Defendants.

Case No.: 1:13-cv-02029-AWI-SAB (PC)

FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

[ECF Nos. 70, 89]

Plaintiff James W. Millner is appearing pro se in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**PROCEDURAL BACKGROUND**

This action is proceeding on Plaintiff's claim of excessive force against Defendants J. Anderson, D. Rodriguez, and O. Marroquin, a cognizable claim for failure to protect against Defendants W. Sweetser, R. Sulier, Pair, and Pelayo, and a cognizable claim of deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendants J. Anderson, O. Marroquin, D. Rodriguez, W. Sweetser, R. Sulier, Pair, and Dr. Dileo.[1]

[1] Defendant Dr. Dileo has not yet been served with process.

On June 23, 2015, Rodriguez, Anderson, Sulier, Marroquin, Sweetser and Pair filed a motion for summary judgment for lack of exhaustion of the administrative remedies. (ECF No. 70.)

On July 13, 2015, Plaintiff filed an opposition, along with a separate motion for summary judgment on the merits of his claims.[2] (ECF Nos. 73, 74.)

Defendants filed a reply to Plaintiff's opposition on July 17, 2015. (ECF No. 76.)

On July 22, 2015, Defendant Pelayo joined in the motion for summary judgment relating to exhaustion. (ECF No. 81.)

On August 5, 2015, Plaintiff filed a response to Defendants' reply. (ECF No. 85.) Defendants filed a motion to strike Plaintiff's surreply on August 13, 2015. (ECF No. 89.)

Pursuant to court permission, Plaintiff filed a supplement to his opposition on September 10, 2015, and Defendants filed a response on October 1, 2015. (ECF Nos. 94, 98.)

## II.

## DISCUSSION

### A. Defendants' Motion to Strike Surreply

Defendants move to strike the filing of a surreply by Plaintiff.

Parties do not have the right to file surreplies and motions are deemed submitted when the time to reply has expired. Local Rule 230(*l*). The Court generally views motions for leave to file a surreply with disfavor. Hill v. England, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing Fedrick v. Mercedes-Benz USA, LLC, 366 F.Supp.2d 1190, 1197 (N.D. Ga. 2005)). However, district courts have the discretion to either permit or preclude a surreply. See U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); JG v. Douglas County School Dist., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file surreply where it did not consider new evidence in reply); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond).

---

[2] On July 22, 2015, the Court granted Defendants request to stay briefing on Plaintiff's motion for summary judgment relating to the merits, until after the instant motion for summary judgment is resolved. (ECF No. 80.)

In this instance, the Court did not grant Plaintiff leave to file a surreply and does not desire any further briefing, beyond the supplemental opposition and response, authorized by the Court. Accordingly, the surreply will not be considered in these findings and recommendations and should be stricken from the record.

**B. Exhaustion under the Prisoner Litigation Reform Act**

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

Defendants must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing Albino, 747 F.3d at 1172) (quotation marks omitted). The burden then shifts to Plaintiff to show that something in his particular case made the existing and generally available administrative remedies effectively unavailable to him. Williams, 775 F.3d at 1191 (citing Albino, 747 F.3d at 1172) (quotation marks omitted). The ultimate burden of proof on the issue of exhaustion remains with Defendants. Id. (quotation marks omitted).

///

**C. Motion for Summary Judgment**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

As set forth above, the defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

The California Department of Corrections and Rehabilitation (CDCR) has an administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners' welfare. Cal. Code Regs. tit. 15, § 3084.1. The administrative grievance process is initiated upon an inmate filing an Inmate/Parolee Appeal Form 602. Id. The administrative grievance process has three levels of review. Id. at § 3084.7. The first formal level of the inmate grievance process is usually conducted by the prison's Appeals Coordinator. Id. at § 3-

8045(b). Since January 28, 2011, an inmate must file his administrative appeal at the first level within thirty calendar days after an alleged incident and must list all staff members involved. Cal. Code Regs. tit. 15, §§ 3084.2(a)(3), 3084.8(b). If the grievance is not resolved at the first level, the inmate may seek review at the second level. Id. §§ 3084.7(b), 3084.7(d)(2). If the inmate remains dissatisfied with the second level decision, he may seek a decision at the third and final level of review by the CDCR's Director or the Director's designee. Id. §§ 3084.7(c), 3084.7(d)(3). In order to exhaust available remedies, a prisoner must generally proceed through the available levels of review to and including the director's level (i.e., third level). Id. § 3084.1(b).

**D. Allegations of Complaint**

On July 14, 2013, at approximately 7:30 p.m., Sergeant J. Anderson along with officers Marroquin and Rodriguez approached Plaintiff's cell. Anderson possessed Plaintiff's identification card which revealed that he was mobility impaired. Anderson ordered Plaintiff to step out of his cell and Plaintiff was handcuffed without resistance.

Sergeant Anderson, along with officers Marroquin and Rodriguez escorted Plaintiff from the yard to the program office. Plaintiff previously had eight back surgeries, three knee surgeries and two shoulder surgeries. Plaintiff also contracted Valley Fever at Kern Valley State Prison (KVSP) in July 2012, which caused pneumonia, lesions, and scaring in his lungs, anemia, and chest pain which lead to mobility impairment. Plaintiff told Anderson and Rodriguez that he could not maintain a fast pace and could not breath due to his disabilities.

Anderson told Plaintiff that if he did not keep up that he was going down. Approximately half way through the escort, Plaintiff was lagging behind due to his disabilities and Anderson grabbed Plaintiff's neck, pulled him to the pavement, cutting off his air supply as he grinded Plaintiff's head and face into the pavement. Anderson caused several spiral fractures to his right foot and injured his right ankle, knee, shoulder, neck, and side of his head and face. Plaintiff was forced to walk approximately one hundred yards to the program office in severe pain.

Defendant Rodriguez and Marroquin assisted Anderson in escorting and using force during the incident on July 24, 2013.

Defendant J. Pelayo called in a false report that Plaintiff assaulted nurse Ngadjou with a pill capsule that put a violent escort in motion. Defendants Pelayo, Sweetser, Sulier, failed to notify the escorting officers that he was mobility impaired and suffered from Valley Fever symptoms. Sweetser, Sulier, and Pair watched the escort and observed the excessive use of force and failed to take action to stop or report it.

None of these Defendants summoned medical assistance for Plaintiff following the use of force.

When Plaintiff reached the program office, he attempted suicide. Associate Warden Patrick Denney directed Anderson to take Plaintiff to the Delano Hospital for treatment. Anderson would not allow Plaintiff to use a wheelchair or ambulatory assistive device but forced him to walk in severe pain. At the hospital, the doctor discovered several fractures in his foot and offered crutches but Anderson denied them forcing Plaintiff to walk again in severe pain.

Associate Warden Denney allowed Plaintiff to be transferred to High Desert State Prison (HDSP) on July 17, 2013, for two weeks for a mental health follow-up without allowing him to see an orthopedic doctor, despite the order from the doctor at the hospital that Plaintiff was in need of examination by an orthopedic the following morning. The transfer to HDSP only caused further injury because Plaintiff did not receive proper medical treatment before leaving KVSP.

On July 15, 2013, a mandatory video-taped interviewed was conducted by Defendants D. Hicks, J.S. Diaz, and Sandoval, relating to the use of force. Despite the officers' assurances that Plaintiff would receive proper medical treatment, they conspired to transfer Plaintiff to HDSP to avoid liability by KVSP prison officials.

In July 2012, Plaintiff contracted Valley Fever and Doctors Dileo did nothing to treat the side effects of such illness, which lead to the officer's use of force on July 14, 2013. It took Dr. Dileo over two months to get Plaintiff into surgery after returning back to KVSP from HDSP. According to Dr. Alade, the time lapse in waiting for surgery caused permanent damage to Plaintiff's left wrist and arm. Dr. Dileo left Plaintiff's broken foot untreated and as of August 21, 2014, Plaintiff was still waiting for further surgery.

**E. Statement of Undisputed Facts**[3]

1. Plaintiff filed his initial complaint in the United States District Court for the Northern District of California on November 22, 2013. (ECF No. 4 at 1.)

2. The case was transferred to this Court on December 12, 2013. (ECF No. 7.)

3. Plaintiff filed his third amended complaint (i.e., the operative complaint) on September 10, 2014. (ECF No. 30 at 1.)

4. Plaintiff alleges that the conduct at issue in the third amended complaint took place on July 14, 2013. (ECF No. 30 at 3.)

5. At all times relevant to the third amended complaint, Plaintiff James W. Millner (F-83475) was a state inmate incarcerated at Kern Valley State Prison (KVSP) in Delano, California. (ECF No. 30 at 1-4.)

6. The conduct at issue in the third amended complaint, as screened, took place at KVSP. (ECF No. 30 at 1.)

7. KVSP has an inmate grievance process for nonmedical inmate appeals, which contains three levels of review. An inmate's appeal must proceed through the third level of review in order to conclude the inmate grievance process. ECF No. 70-3, Declaration of S. Tallerico, ¶ 2 [hereinafter "Tallerico Decl."]; ECF No. 70-4, Declaration of M. Voong, ¶¶ 2-5 [hereinafter "Voong Decl."].)

8. Plaintiff admits in his third amended complaint that although KVSP has an inmate appeals process, he did not complete this process.[4] (ECF No. 30 at 2.)

9. From July 14, 2013, through November 22, 2013, Plaintiff filed no inmate appeals at the second level of review at KVSP. (Tallerico Decl. ¶¶ 3, 6-7.)

---

[3] Plaintiff neither filed his own separate statement of undisputed facts nor admitted or denied the facts set forth by Defendants as undisputed. Local Rule 260(b). Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint and verified opposition. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it based on pleader's personal knowledge of specific facts which are admissible in evidence); see also Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

[4] See Pl.'s third amended complaint, ECF No. 30 at 2 ["Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? Yes"]; see also Pl.'s third amended complaint, ECF No. 30 at 2 ["Is the process completed? Yes and No"].

10. From July 14, 2013 through November 22, 2013, Plaintiff had one appeal accepted at the third level of review—appeal No. KVSP-13-00407, accepted on July 15, 2013. (Voong Decl. ¶¶ 6-7.)

11. From July 14, 2013 through November 22, 2013, Plaintiff had one appeal screened-out at the third level of review—appeal No. KVSP-13-01342. (Voong Decl. ¶¶ 6, 8.)

12. Neither of the two appeals submitted by Plaintiff to the third level of review between July 14, 2013, through November 22, 2013, mentioned Defendants excessive force or the conduct described in Plaintiff's third amended complaint. (Voong Decl. ¶¶ 6-9.)

13. In appeal No. KVSP-13-00407, Plaintiff complained that some of his property was removed during a cell search and never returned. Plaintiff's appeal was denied at the third level on August 22, 2013, because Plaintiff did not provide evidence to support his claim that staff ever confiscated the items he claimed was missing. (Voong Decl. ¶ 10.)

14. In appeal No. KVSP-13-01342, Plaintiff complained that he was missing certain items after a cell search, and requested a cell search receipt. Appeal No. KVSP-13-01342 was screened-out at the third level for Plaintiff's failure to comply with the time constraints for submitting an inmate appeal. (Voong Decl. ¶ 11.)

15. Plaintiff submitted two inmate appeals to the third level of review after November 22, 2013—appeal No. OOA-13-03865 and appeal No. KVSP-14-02850. (Voong Decl. ¶¶ 12-13.)

16. In appeal No. OOA-13-03865, Plaintiff complained that the Office of Inmate Appeals improperly cancelled a property appeal from Kern Valley State Prison for being untimely submitted. The third level denied Plaintiff's appeal on February 6, 2014, finding that Plaintiff had exceeded the time limits for submitted the appeal despite having the opportunity to submit within the prescribed time constraints. This appeal did not mention Defendants or the events at issue in Plaintiff's complaints. (Voong Decl. ¶ 15.)

17. In appeal No. KVSP-14-02850, Plaintiff complained that appeals staff at KVSP improperly cancelled another inmate appeal (KVSP-0-14-01853) for being untimely submitted. The third level denied Plaintiff's appeal on February 23, 2015, finding that Plaintiff had failed to submit his inmate appeal within the thirty calendar days of the incident at issue in the appeal. Appeal No. KVSP-14-02850 did not mention Defendants' conduct as the basis for the inmate appeal. Appeal No. KVSP-0-14-01853 and an attached Rules Violation Report (No. FD-13-07-18R), which Plaintiff attached to appeal No. KVSP-14-02850, indirectly mentions Defendants, but only insofar as their names appear in the Rules Violation Report. In appeal No. KVSP-0-14-01853, Plaintiff did not mention the events at issue in his complaints, but rather complained about mistreatment during a Rules Violation hearing. (Voong Decl. ¶ 16.)

18. Plaintiff has filed at least nine inmate appeals at the first level of review at KVSP since December 29, 2011. (Tallerico Decl. ¶ 8.)

19. Plaintiff has filed at least seven inmate appeals at the second level of review since February 2, 2012. (Tallerico Decl. ¶ 9.)

20. Plaintiff has filed at least twenty-nine inmate appeals at the third level of review since April 29, 2008. (Voong Decl. ¶ 17.)

**F. Parties' Positions**

Defendants argue despite the availability of a grievance procedure, it is undisputed that Plaintiff failed to file an inmate appeal regarding the claims in the instant action.

Plaintiff initially argues that the administrative remedies were not available to him during the relevant time frame to file an appeal because Plaintiff's mental health status and physical injuries prevented him from filing a timely appeal. Plaintiff contends that from July 14, 2013, until August 5, 2013, he was in a mental health crisis bed, then on suicide watch, was in severe pain, did not have access to writing materials or his property, and did not access to grievance forms. (ECF No. 74, Opp'n at 5.) Plaintiff subsequently argues that he "did file an administrative appeal; however [the] appeal disappeared after it was submitted." (Id.) Plaintiff submits that his appeal was improperly

screened-out, and speculates that his appeal may have been "throw[n] away" in an attempt to thwart his claim. (Id. at 8.)

In their reply, Defendants argue that even assuming the validity of Plaintiff's arguments, he nevertheless fails to explain why he could not submit his inmate appeal between August 5, 2013 (the date Plaintiff left suicide watch) and August 13, 2013 (the deadline for submitting his appeal. (ECF No. 76, Reply at 4.)

In his supplemental opposition, Plaintiff reiterates his arguments that his mental health and physical condition prevented him from filing a timely grievance. Plaintiff contends specifically he was "still suffering from an episode of major depression and mixed anxiety, throughout the period in which he was required to file an inmate appeal. (ECF No. 94, Supp. Opp'n at 4.) Plaintiff further contends that ""[a]lthough [he] cannot remember the exact date that [he] was able to begin to function once again, it was well after the date in which [he] had to file [his] administrative appeal—August 13, 2013. (Id. at 8.)

In their supplemental response, Defendants argue that Plaintiff's appeal history belies his claim that depression prevented him from an appeal during the relevant time period. Defendants argue that Plaintiff was able to file two inmates in May 2013, when he was in a mental health crisis bed. (ECF No. 98, Supp. Resp. at 2-3.)

**G. Analysis and Findings**

The event which gave rise to the claims in the instant action occurred on July 14, 2013, and Plaintiff filed the original complaint in this action on November 22, 2013. There is no dispute that a grievance process existed at KVSP during the relevant time frame. (ECF No. 30 at 2.) Plaintiff does not dispute that he did not complete a grievance at the director's level for the claims in the instant action.

Defendants submit that KVSP has an inmate grievance process for nonmedical inmate appeals, which contains three levels of review, and Plaintiff did not file an appeal relevant to the claims at issue in this action. However, Plaintiff declares, under penalty of perjury, the administrative remedy process was not available to him during the relevant time frame to file an appeal because Plaintiff's mental health status and physical injuries prevented him from filing a timely appeal, and Plaintiff

subsequently filed an untimely appeal for which he never received a response. (ECF No. 74, Opp'n, Declaration of Plaintiff at ¶¶ 3-11.)

There is a genuine issue of material fact as to whether the administrative remedies were effectively unavailable to Plaintiff. Defendants submit evidence that the administrative grievance process was available in general, but do not address specifically the extent of the availability of the administrative process during placement in a mental health crisis bed, suicide watch, and Plaintiff's subsequent recovery from such conditions. See Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (noting that in order for an administrative remedy to be available "it must be 'capable of use; at hand.'"); see also Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (the PLRA "does not require exhaustion when no pertinent relief can be obtained through the internal process.") Plaintiff contends during his time in the mental health crisis bead, and suicide watch, he was "not allowed any property, writing materials, or access to the CDCR grievance system." (ECF No. 74, Opp'n, Declaration of Plaintiff ¶ 6.) Although Defendants argue that Plaintiff was released from suicide watch on August 5, 2013, and therefore had from August 5, 2013 to August 13, 2013, to file a grievance, Plaintiff submits by way of verified declaration that he was unable to file a grievance due to his mental and physical condition and placement within the mental health crisis bed, suicide watch, and subsequent recovery. The factual contentions raised by Plaintiff cannot be resolved by way of motion for summary judgment. The fact that Plaintiff may or may not have had the ability to previously file an inmate appeal in May 2013, when he was in a mental health crisis bed, is not relevant nor dispositive of the issue of whether the circumstances at the relevant time in this case rendered the administrative remedy process unavailable. Thus, without examining all the facts and claims and weighing the evidence, the Court cannot resolve whether or not Plaintiff had a reasonable opportunity to utilize the administrative remedies during the relevant time frame or whether the administrative remedies were effectively unavailable to him. See, e.g., Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (remanding exhaustion issue to district court where record unclear as to whether prisoner injured in a knife attack at the hands of another prisoner had access to the necessary grievance forms or the ability to timely file an appeal due to his stay in the hospital, prison infirmary, and subsequent administrative segregation).

Because the Court cannot make credibility determinations on motion for summary judgment, the Court must recommend that Defendants' motion for summary judgment be denied, subject to an evidentiary hearing to resolve: (1) whether an administrative grievance process was available to Plaintiff; and (2) if a process was available to Plaintiff whether he filed an untimely grievance and received no response. See Albino, 747 F.3d at 1170.

**III.**

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion to strike Plaintiff's surreply be GRANTED; and
2. Defendants' motion for summary judgment be DENIED, subject to an evidentiary hearing.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 11, 2016**

UNITED STATES MAGISTRATE JUDGE