**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES W. MILLNER,<br><br>    Plaintiff,<br><br>    v.<br><br>MARTIN BITER, et al.,<br><br>    Defendants. | Case No.: 1:13-cv-02029-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS FOLLOWING EVIDENTIARY HEARING RECOMMENDING DISMISSAL OF ACTION, WITHOUT PREJUDICE, FOR FAILURE TO EXHAUST THE ADMINISTRATIVE REMEDIES |

Plaintiff James W. Millner is appearing pro se in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**PROCEDURAL HISTORY**

This action is proceeding on Plaintiff's claim of excessive force against Defendants J. Anderson, D. Rodriguez, and O. Marroquin, a cognizable claim for failure to protect against Defendants W. Sweetser, R. Sulier, Pair, and Pelayo, and a cognizable claim of deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendants J. Anderson, O. Marroquin, D. Rodriguez, W. Sweetser, R. Sulier, Pair, and Dr. Dileo.

On June 23, 2015, Rodriguez, Anderson, Sulier, Marroquin, Sweetser and Pair filed a motion for summary judgment for lack of exhaustion of the administrative remedies. (ECF No. 70.)

1

1  On July 13, 2015, Plaintiff filed an opposition, along with a separate motion for summary
2  judgment on the merits of his claims.[1]  (ECF Nos. 73, 74.)
3  Defendants filed a reply to Plaintiff's opposition on July 17, 2015.  (ECF No. 76.)
4  On July 22, 2015, Defendant Pelayo joined in the motion for summary judgment relating to
5  exhaustion.  (ECF No. 81.)
6  On August 5, 2015, Plaintiff filed a response to Defendants' reply.  (ECF No. 85.)  Defendants
7  filed a motion to strike Plaintiff's surreply on August 13, 2015.  (ECF No. 89.)
8  Pursuant to court permission, Plaintiff filed a supplement to his opposition on September 10,
9  2015, and Defendants filed a response on October 1, 2015.  (ECF Nos. 94, 98.)
10  On January 11, 2016, the undersigned issued a Findings and Recommendation to deny
11  Defendants' motion for summary judgment.  (ECF No. 108.)
12  The Findings and Recommendation was adopted in full on March 9, 2016, and the matter was
13  referred back to the undersigned for an evidentiary hearing on the issue of exhaustion of the
14  administrative remedies.  (ECF No. 116.)
15  In Albino v. Baca, 747 F.3d 1162, 1170-1171 (9th Cir. 2014), the Ninth Circuit held that "[i]f a
16  motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be
17  decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions
18  relevant to jurisdiction and venue.") (citations omitted).
19  On March 30, 2016, the Court issued an order setting the matter for an evidentiary hearing to
20  determine the limited issues of (1) whether an administrative grievance process was available to
21  Plaintiff; and (2) if a process was available to Plaintiff whether he filed an untimely grievance and
22  received no response.  See Albino v. Baca, 747 F.3d at 1170-1171.
23  On April 28, 2016, the Court held the evidentiary hearing, and Deputy Attorney Generals,
24  Andrew Whisnand and Tracy Hendrickson appeared on behalf of Defendants,  and Plaintiff appeared
25  in person pro se.  At the hearing, the Court heard testimony by witnesses and took evidence in relation
26  to the issue outlined above.

---

[1] On July 22, 2015, the Court granted Defendants request to stay briefing on Plaintiff's motion for summary judgment relating to the merits, until after the instant motion for summary judgment is resolved.  (ECF No. 80.)

2

After the hearing, the Court took the matter under submission for issuance of the instant Findings and Recommendations to resolve whether Plaintiff exhausted the available administrative remedies as to the claims presented in this action.

On July 13, 2016, Defendants filed a request to submit supplemental briefing in light of the Supreme Court's recent decision in Ross v. Blake, 136 S.Ct. 1850 (2016), which was granted on July 15, 2016. Defendants filed a supplemental brief on July 29, 2016. Plaintiff did not file a response.

However, on August 15, 2016, Plaintiff requested a copy of the evidentiary hearing transcript. The Court granted Plaintiff's request on August 31, 2016, and Plaintiff was provided both a copy of the evidentiary hearing transcript and the United States Supreme Court's decision in Ross v. Blake, 136 S.Ct. 1850 (2016), and Plaintiff was provided thirty additional days to file a response to Defendants' supplemental briefing. Plaintiff filed an opposition on September 12, 2016. Accordingly, the matter is deemed submitted for ruling.

## II.

## DISCUSSION

### A. Legal Standard for Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only

3

if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

Defendants must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing Albino, 747 F.3d at 1172) (quotation marks omitted). The burden then shifts to Plaintiff to show that something in his particular case made the existing and generally available administrative remedies effectively unavailable to him. Williams, 775 F.3d at 1191 (citing Albino, 747 F.3d at 1172) (quotation marks omitted). The ultimate burden of proof on the issue of exhaustion remains with Defendants. Id. (quotation marks omitted).

The California Department of Corrections and Rehabilitation (CDCR) has an administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners' welfare. Cal. Code Regs. tit. 15, § 3084.1. The administrative grievance process is initiated upon an inmate filing an Inmate/Parolee Appeal Form 602. Id. The administrative grievance process has three levels of review. Id. at § 3084.7. The first formal level of the inmate grievance process is usually conducted by the prison's Appeals Coordinator. Id. at § 3-8045(b). Since January 28, 2011, an inmate must file his administrative appeal at the first level within thirty calendar days after an alleged incident and must list all staff members involved. Cal. Code Regs. tit. 15, §§ 3084.2(a)(3), 3084.8(b). If the grievance is not resolved at the first level, the inmate may seek review at the second level. Id. §§ 3084.7(b), 3084.7(d)(2). If the inmate remains dissatisfied with the second level decision, he may seek a decision at the third and final level of review by the CDCR's Director or the Director's designee. Id. §§ 3084.7(c), 3084.7(d)(3). In order to exhaust available remedies, a prisoner must generally proceed through the available levels of review to and including the director's level (i.e., third level). Id. § 3084.1(b).

**B.     Allegations of Complaint**

On July 14, 2013, at approximately 7:30 p.m., Sergeant J. Anderson along with officers Marroquin and Rodriguez approached Plaintiff's cell. Anderson possessed Plaintiff's identification card which revealed that he was mobility impaired. Anderson ordered Plaintiff to step out of his cell and Plaintiff was handcuffed without resistance.

4

Sergeant Anderson, along with officers Marroquin and Rodriguez escorted Plaintiff from the yard to the program office. Plaintiff previously had eight back surgeries, three knee surgeries and two shoulder surgeries. Plaintiff also contracted Valley Fever at Kern Valley State Prison (KVSP) in July 2012, which caused pneumonia, lesions, and scaring in his lungs, anemia, and chest pain which lead to mobility impairment. Plaintiff told Anderson and Rodriguez that he could not maintain a fast pace and could not breath due to his disabilities.

Anderson told Plaintiff that if he did not keep up that he was going down. Approximately half way through the escort, Plaintiff was lagging behind due to his disabilities and Anderson grabbed Plaintiff's neck, pulled him to the pavement, cutting off his air supply as he grinded Plaintiff's head and face into the pavement. Anderson caused several spiral fractures to his right foot and injured his right ankle, knee, shoulder, neck, and side of his head and face. Plaintiff was forced to walk approximately one hundred yards to the program office in severe pain.

Defendant Rodriguez and Marroquin assisted Anderson in escorting and using force during the incident on July 24, 2013.

Defendant J. Pelayo called in a false report that Plaintiff assaulted nurse Ngadjou with a pill capsule that put a violent escort in motion. Defendants Pelayo, Sweetser, Sulier, failed to notify the escorting officers that he was mobility impaired and suffered from Valley Fever symptoms. Sweetser, Sulier, and Pair watched the escort and observed the excessive use of force and failed to take action to stop or report it.

None of these Defendants summoned medical assistance for Plaintiff following the use of force.

When Plaintiff reached the program office, he attempted suicide. Associate Warden Patrick Denney directed Anderson to take Plaintiff to the Delano Hospital for treatment. Anderson would not allow Plaintiff to use a wheelchair or ambulatory assistive device but forced him to walk in severe pain. At the hospital, the doctor discovered several fractures in his foot and offered crutches but Anderson denied them forcing Plaintiff to walk again in severe pain.

Associate Warden Denney allowed Plaintiff to be transferred to High Desert State Prison (HDSP) on July 17, 2013, for two weeks for a mental health follow-up without allowing him to see an

orthopedic doctor, despite the order from the doctor at the hospital that Plaintiff was in need of examination by an orthopedic the following morning. The transfer to HDSP only caused further injury because Plaintiff did not receive proper medical treatment before leaving KVSP.

On July 15, 2013, a mandatory video-taped interviewed was conducted by Defendants D. Hicks, J.S. Diaz, and Sandoval, relating to the use of force. Despite the officers' assurances that Plaintiff would receive proper medical treatment, they conspired to transfer Plaintiff to HDSP to avoid liability by KVSP prison officials.

In July 2012, Plaintiff contracted Valley Fever and Doctors Dileo did nothing to treat the side effects of such illness, which lead to the officer's use of force on July 14, 2013. It took Dr. Dileo over two months to get Plaintiff into surgery after returning back to KVSP from HDSP. According to Dr. Alade, the time lapse in waiting for surgery caused permanent damage to Plaintiff's left wrist and arm. Dr. Dileo left Plaintiff's broken foot untreated and as of August 21, 2014, Plaintiff was still waiting for further surgery.

**C.    Analysis and Findings on Exhaustion of Administrative Remedies**

As previously stated, the Court conducted an evidentiary hearing on April 28, 2016, to determine whether an administrative grievance process was available to Plaintiff, and if a process was available to Plaintiff, whether he filed an untimely grievance and received no response.

At the evidentiary hearing, joint exhibit A, Plaintiff's exhibits 2, 3, 4, 6, 7, 9, 11, 13, 14, 15, 16, 17, 19, and Defendants' exhibits A, B, C, E were admitted into evidence. Plaintiff testified on his own behalf, and Defendants presented the testimony of Jacob Marciel, John Lindgren, Richard Speidell and Sean Tallerico. The transcript of the evidentiary hearing was filed on June 2, 2016.[2]  (ECF No. 138.)

If "summary judgment is not appropriate," as to the issue of exhaustion "the district judge may decide disputed questions of fact in a preliminary proceeding." Albino, 747 F.3d at 1168.  "[O]ne of the purposes of an evidentiary hearing is to 'enable [] the finder of fact to see the witness's demeanor, and to hear the tone of the witness's voice.'" United States v. Mejia, 69 F.3d 309, 315 (9th Cir. 1995).

---

[2] The "Reporter's Transcript" of the evidentiary hearing is hereinafter referred to as "RT."

6

1 Indeed, it is only in "rare instances … that credibility may be determined without an evidentiary
2 hearing." Earp v. Ornoski, 431 F.3d 1158, 1169-70 (9th Cir. 2005).

3     Failure to exhaust may be excused where the administrative remedies have been rendered
4 "unavailable," and in such a case, the plaintiff bears the burden of demonstrating that the grievance
5 process was unavailable to him through no fault of his own. Sapp v. Kimbrell, 623 F.3d 813, 822-23
6 (9th Cir. 2010); see also Ward v. Chavez, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused
7 where futile); Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) (warden's mistake rendered
8 prisoner's administrative remedies "effectively unavailable"); Brown v. Valoff, 422 F.3d 926, 939-40
9 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level
10 and no further relief was available). Aside from this single exception, "the PLRA's text suggests no
11 limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'… [a]nd that
12 mandatory language means a court may not excuse a failure to exhaust, even to take such
13 circumstances into account." Ross v. Blake, 136 S.Ct. 1850, 1856 (2016).

14     The test for deciding whether a grievance procedure was unavailable uses an objective
15 standard. Albino v. Baca, 697 F.3d 1023, 1035 (9th Cir. 2012) ("Albino I"). "[A]ffirmative actions
16 by jail staff preventing proper exhaustion, even if done innocently, make administrative remedies
17 effectively unavailable." Id. at 1034. An inmate may demonstrate the unavailability of remedies by
18 showing "(1) that jail staff affirmatively interfered with his ability to exhaust administrative remedies
19 or (2) that the remedies were unknowable." Id. at 1033. The inmate must make "a good-faith effort"
20 to determine and comply with a prison's grievance procedures. Id. at 1035.

21     In Ross, the Supreme Court held that administrative remedies are unavailable only where they
22 are "not capable of use to obtain relief." Ross, 136 S.Ct. at 1859. After Ross, administrative remedies
23 are not unavailable simply because circumstances make the process difficult or unpleasant; rather,
24 remedies are unavailable in extreme circumstances, such as where the grievance process is "a simple
25 dead end", is "practically speaking, incapable of use", or "when prison administrators thwart inmates
26 from taking advantage of a grievance process through machination, misrepresentation, or
27 intimidation." Id. at 1860. While the list of circumstances set forth in Ross was not all-inclusive, it
28

7

was specifically held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Id. at 1862.

        1.        <u>Whether Plaintiff's Mental or Physical Condition Rendered Administrative Remedies Unavailable</u>

Plaintiff contends that from July 14, 2013 to August 5, 2013, he was in a mental health crisis bed, then suicide watch, in severe pain, did not have access to writing materials or his property, and did not have access to grievance forms. In response, Defendants argue that even assuming the validity of Plaintiff's arguments, Plaintiff fails to explain why he could not submit his inmate appeal between August 5, 2013 (the date Plaintiff left suicide watch) and August 13, 2013 (the deadline for submitting his appeal).

        **a.**        **Evidence Presented at Hearing**

During the evidentiary hearing, Plaintiff testified that after the incident on July 14, 2013, he was sent to a mental health crisis bed at HDSP and was not provided writing materials, pens, pencils or access to the grievance system. (RT 28-29, 37.) Plaintiff was subsequently transferred back to KVSP on July 31, 2013, and was in pain from suffering a broken wrist in two places and four broken bones in his foot and ankle. Plaintiff was also suffering from depression, valley fever symptoms, and anemia. (RT 29.) Plaintiff did not have access to the grievance system. (Id.) When Plaintiff did file an appeal, it went missing. (RT 30.) Plaintiff filed a form 22 request to Mr. Tallerico as to the location and status of his appeal, and was informed that no record is maintained of appeals that are canceled or rejected. (RT 31.) During August 5 to August 13, 2013, Plaintiff was not on suicide watch. (RT 40.) During the month of August 2013, Plaintiff was taking Cymbalta to help with his depression. (Id.) Plaintiff was also in pain from a fractured foot and was prescribed Ibuprofen for the pain. (RT 40-41.) Plaintiff filed several inmate appeals prior to August 2013. (RT 42.) In May 2013, during an instance where Plaintiff attempted suicide and was placed in a mental health crisis bed, he filed two appeals. (RT 42.)

Dr. Lindgren, Senior Psychiatrist Specialist at CDCR, Dr. Lindgren reviewed Plaintiff's mental health records and determined that Plaintiff has a history of intermittent depressive symptoms and infrequent or rare suicidal ideation. (RT 94-95.) During the months of July and August 2013, Plaintiff

8

was in a mental health crisis bed at High Desert State Prison for suicidal ideation and suicide attempt or gesture. (RT 95.) Plaintiff's suicidal ideation resolved or remitted during the first couple days of his stay at the mental health crisis bed. (Id.) When Plaintiff returned from HDSP to KVSP, the five day observation period is not considered a suicide watch. (RT 95-96.) Dr. Lindgren clarified that a suicide watch is performed on persons who have suicidal ideation and they are placed in a housing situation that is more suicide resistant with more observation and monitoring. (RT 96.) Rather, the five-day follow up allows mental health professionals to check on the patient daily following the release from a higher level of care to ascertain whether there are mental health concerns or issues. (Id.) A person is discharged from a mental crisis bed to administrative segregation on a five-day follow up period when they are deemed not suicidal or homicidal and can care for themselves. (Id.) After such release to administrative segregation, inmates are allowed access to writing utensils and access to grievance forms. (RT 96-97)

    During the month of August 2013, Dr. Linkgren found no evidence from Plaintiff's medical records of suicidal ideations and the notations suggested that he was in fact psychiatrically stable. (RT 97.) During the month of August 2013, Plaintiff was prescribed Cymbalta which is a common anti-depression medication given to individuals who have depressive symptoms. (Id.) There was no evidence that Plaintiff suffered any side-effects from the medication. (RT 98.) During this time frame, Plaintiff was also taking Ibuprofen for pain intermittently. (Id.) It was Dr. Lindgren's opinion that Plaintiff's depression symptoms during the month of August 2013 would not prevent him from filing an inmate appeal, as there were no records to indicate his symptoms were debilitating or would interfere with a person's ability to craft a few sentences. (RT 99.) Indeed, it was Dr. Lindgren's opinion that if a person was so severely depressed that he could not craft a few sentences, he would be transferred to a high level of care for more intensive treatment. (Id.) If an inmate, at any time, reports suicidal ideations, he is immediately monitored or moved to a safe housing setting until stable. (RT 100.)

    Clinical Social Worker (CSW) at CDCR-KVSP, Jacob Marciel, testified that his role at the prison is to complete several evaluations to allow an inmate to receive certain mental health treatment, including diagnosis and case management treatment. (RT 60.) Mr. Marciel was Plaintiff's primary

1  clinician during the month of August 2013.  (RT 62.)  Mr. Marciel interviewed Plaintiff on August 1
2  and 2, 2013, after his release from the mental health crisis bed unit.  (RT 64-65.)  There were no signs
3  or notations that Plaintiff was suffering from debilitating depression or that he was having any
4  difficulty with his assisted daily living.  (RT 66-68.)  If an inmate informed Mr. Marciel that he was
5  having difficulty filing an inmate grievance, Mr. Marciel would make a notation on the progress notes
6  form.  (RT 68.)  He would then go to the lieutenant or sergeant assigned to the building and notify him
7  that the inmate was having difficulty filing an inmate grievance, and assistance would be provided to
8  the help the inmate.  (RT 68.)  More specifically, if the inmate was having "difficulty with reading and
9  writing or spelling" Mr. Marciel would assist with that.  (RT 69.)  Assistance would be provided to
10 help the inmate articulate some of the ideas and determine exactly what the appeal involved so that the
11 grievance can be submitted.  (Id.)   Mr. Marciel interviewed Plaintiff on August 6, 2013, to ascertain
12 his current mental health status upon placement into administrative segregation.  (RT 71-73.)  If
13 Plaintiff had mentioned any difficulty or issues with filing an administrative grievance, Mr. Marciel
14 would have made a notation on the interview addendum form (Joint Ex. A), but there was no notation
15 that Plaintiff was having any issues filing an administrative grievance.  (RT 73-74; Joint Ex. A.)
16 Plaintiff also made no indication that he was suffering pain at that time.  (RT 74, Joint Ex. A.)  Part of
17 the interview and addendum dated August 6, 2013, listed Plaintiff's past diagnosis and treatment plan
18 (Dx Hx), which outlines previous diagnosis and treatment provided.  (RT 74-75.)

19      With regard to the specific treatment provided to Plaintiff, there were four elements of the
20 treatment plan.  (RT 75.)  The first part was to decrease depressive episodes; the second part was
21 developing coping skills; the third part was a safety plan for suicide; and the fourth part was to
22 increase positive communication skills.  (RT 75-76.)

23      On the suicide evaluation form dated August 7, 2016 (Joint Ex. A09), Mr. Marciel noted that
24 Plaintiff was irritable.  (RT 77.)  Plaintiff denied any thoughts of suicidal ideation or suicide attempts,
25 homicidal intent, auditory hallucination or visual hallucination at that time.  (Id.)  Plaintiff's hygiene
26 and grooming was appropriate, and Plaintiff's thought process was linear and speech was clear.  (Id.)

27      On August 14, 2013 (Joint Ex. A13-A14), Plaintiff was interviewed by several individuals and
28 provided a one on one opportunity to let them know his mental health needs.  (RT 78.)   It was noted

10

1  that Plaintiff's speech was normal in rate, tone and content, and there was no notation that he was
2  experiencing pain. (RT 80.) The treatment team determined that Plaintiff's mental health was
3  somewhat stable, and he did not need a higher level of care. (RT 81.) There was no notation that
4  Plaintiff indicated he was having trouble filing an administrative segregation, and if Plaintiff had done
5  so Mr. Marciel would have included such notation. (Id.)

6  On August 16, 2013, an interdisciplinary treatment team meeting was conducted. (RT 82;
7  Joint Ex. A19.) There was no notation that Plaintiff was experiencing any mental health issues. (Id.)
8  Mr. Marciel has experienced instances where inmate patients indicated that their mental health has
9  "gotten in the way of them completing" administrative grievance form. (RT 82.) In such instances,
10 the inmates were always provided assistance to complete the necessary forms in a timely manner. (RT
11 82-83.) Based on Mr. Marciel's experience, during the time period of August 5 to August 13, 2013,
12 Plaintiff had the mental capacity to complete the necessary administrative grievance form in a timely
13 manner. (RT 83.)

14 Richard Speidell, correctional lieutenant at CDCR-KVSP, testified that in August 2013, he was
15 assigned to the administrative segregation unit. (RT 105-106.) Inmates housed within administrative
16 segregation have access to inmate appeal forms by simply requesting such form, and such forms can
17 be filed while housed in the unit. (RT 106-107.) Inmates in administrative segregation also have
18 access to pen fillers upon request of staff who are out on the tiers several times during the day. (RT
19 107-108.) When an inmate wishes to submit an inmate appeal while housed in administrative
20 segregation, the most common way would be in the evening during pick up for outgoing mail by way
21 of u-save-em envelope which is institutional internal mail. (RT 108.) The envelope would be
22 forwarded to the mail room and the to the appeals coordinator. (RT 108.)

23 **B.      Findings**

24 The Court finds that Defendants have met their burden in demonstrating that an available
25 administrative remedy system was available to Plaintiff, and the Court does not find Plaintiff's

testimony regarding his mental and physical condition credible given the testimony and evidence presented by Defendants.[3]

Defendants presented evidence by way of two different mental health professionals, CSW Marciel and Dr. Lindgren, who both testified that after reviewing Plaintiff's mental health records there was no evidence that he lacked the capacity to file an appeal. Indeed, Plaintiff's mental health record, submitted as Joint Exhibit A, refers to Plaintiff stating: "I'm better, I'm good, I'm okay, I'm doing okay, zero issues." (Joint Ex. A.) Plaintiff was prescribed Cymbalta to treat his symptoms of depression and such medication would not have interfered with his ability to file a grievance. Dr. Lindgren testified that Plaintiff's symptoms were mild and stable and that he had the ability to file a grievance as early as August 1, 2013, when he returned to KVSP. CSW Marciel testified that Plaintiff never complained to him about his inability to write or file a grievance, and if Plaintiff had done so he would have made a notation of such on the progress notes reflecting that Plaintiff was having trouble verbalizing his thoughts or advocating for himself. Further, if Plaintiff had requested assistance from Marciel, such assistance would have been provided. Both Marciel and Dr. Lindgren testified that Plaintiff would have been referred to a higher level of care if Plaintiff was not getting better and would have never left the mental health crisis bed at HDSP.

With regard to Plaintiff's physical condition, although Plaintiff broke his wrist on his non-dominant writing hand, Plaintiff was taking pain medication to relieve such pain. CSW Marciel testified that Plaintiff's cell was clean, he was well groomed, and Plaintiff never mentioned any pain in any of their meetings. Plaintiff also admitted that on August 8, 2013, he got out of bed to attend an ICC hearing in person. Tallerico testified that Plaintiff was only required to write one paragraph on the grievance form and he could have asked for assistance, but failed to do so. On this record, it is

---

[3] As previously stated, in Albino the Ninth Circuit held that "[i]f a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 188-190 (1936) (subject-matter jurisdiction); Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1139-1140 (9th Cir. 2004) (venue); Lake v. Lake, 817 F.2d 1416, 1420 (9th Cir. 1987) (personal jurisdiction)." Albino, 747 F.3d at 1170-1171. In McNutt, the Court indicated it may "inquire into the facts as they really exist." McNutt, 298 U.S. at 184. In Lake, the Court stated it "has the discretion to take evidence at a preliminary hearing in order to resolve any questions of credibility or fact…." Lake, 817 F.2d at 1420.

clear that remedies were "available" to Plaintiff in that grievance forms and writing utensils were accessible and obtainable. Plaintiff has not met his burden to show that the administrative remedies in this case were unavailable, through no fault of his own. While Plaintiff's pain and/or mental distress may have made the grievance process more challenging, it was not out of reach to Plaintiff so as to be rendered "unavailable" through no fault of his own.

2. Whether Prison Officials Rendered Plaintiff's Administrative Remedies Unavailable by Allegedly Failing to Process an Untimely Appeal

Plaintiff contends that he subsequently filed an appeal, but it disappeared after it was submitted. Plaintiff speculates that it may have been thrown away in an attempt to thwart his claim.

a. **Evidence Presented at Hearing**

Plaintiff testified that on August 5 to August 13, 2013, he "had no assistance device to walk; no crutches, no wheelchair, no walker, no nothing. My -- I was very debilitated. It took everything I had to get up." (RT 42-43.) Plaintiff attended an institutional classification committee hearing on August 8, 2013. (RT 43.) Plaintiff submitted an untimely appeal in this case sometime between September 5, 2013 and November 22, 2013, but never received a response. (RT 43-44.) Plaintiff never appealed Mr. Tallerico's letter indicating that his appeal was denied as untimely, and did not file a staff complaint against Mr. Tallerico. (RT 44.)

Sean Tallerico, correctional counselor specialist (and prior appeals coordinator) at CDCR-KVSP, testified that the appeals office typically receives appeals from the administrative segregation unit through the mail. (RT 115.) The appeals are collected from the appeals box, then placed into the central complex, and retrieved by staff in the morning. (RT 115.) Once an appeal is received it is date stamped and assigned a log number generated from the Inmate Appeals Tracking System (IATS). (RT 115-116.) As of 2012, every single appeal received gets an IATS log number, including appeals that are later screened out. (RT 116.)

Mr. Tallerico testified that he reviewed the IATS and did not find any appeal submitted by Plaintiff between September 5, 2013 and November 22, 2013 relating to the claims in the instant action. (RT 118; Defs.' Ex. C.) If an inmate believes an appeal has gone missing, he can submit a form 22 request for service of interview to ascertain the status of the appeal. (RT 119.) Mr. Tallerico

13

1   was unable to find any form 22 request submitted by Plaintiff during the period of September to
2   November 2013.  (RT 119-120.)  Nor was there any evidence of Plaintiff contacting the appeals office
3   regarding a lost appeal he had filed during this time frame.  (RT 120.)  The appeals office has thirty
4   days from the date the appeal is accepted to respond.  (RT 120.)

5   There is evidence that Plaintiff filed a late appeal on June 24, 2014 (assigned Log No.
6   1402260), received by the appeals office on June 27, 2014.  (RT 121-123; Defs.' Ex. E.)  Plaintiff
7   requested that Sergeant Anderson stay away from him due to a prior alleged assault.  (RT 123.)  The
8   appeal was screened out and returned to Plaintiff on July 1, 2014, requesting further factual
9   information to clarify his claim.  (RT 123-124; Defs.' Ex. E.)  Plaintiff re-submitted the appeal on July
10  8, 2014, and it was canceled as untimely on July 10, 2014.  (RT 124; Defs.' Ex. E.)  The appeal was
11  never submitted to the third level of review.  (RT 125.)

12  Plaintiff submitted an appeal, dated September 15, 2014, in which he requested the 1858
13  procedure report which is the rights and responsibilities completed upon inquiry of an inmate,
14  regarding the findings of Log Nos. 1402260 and 141853 concerning Sergeant Anderson, Wydell,
15  Sergeant Williams.  (RT 125-126; Defs.' Ex. E.)  Appeal Log No. 1402260 was the appeal that was
16  canceled on July 10, 2014.  (RT 126; Defs.' Ex. E.)  The response to Plaintiff's request dated
17  September 15, 2014, was that appeal Log No. 1402260 was canceled as untimely.  (RT 130; Defs.' Ex.
18  E.)

19  Mr. Tallerico testified that an appeals coordinator has discretion to accept untimely appeals
20  from inmates.  (RT 130-131.)  If an appeal is untimely it is not arbitrarily canceled.  (RT 132.)  Rather,
21  the inmate is allowed the opportunity to explain (by way of CDCR 695 screening form) why it is late
22  or untimely.  (RT 132.)  If an adequate explanation is not provided the appeal is canceled as untimely.
23  (Id.)  However, the inmate may further appeal a canceled grievance as untimely within thirty days of
24  the CDCR 695 screening form.  (Id.)

25  **b.    Findings**

26  The Court finds that Defendants have met their burden in demonstrating that an available
27  administrative remedy system was available to Plaintiff, and the Court does not find Plaintiff's

28

1 testimony credible regarding the filing of an appeal and availability of the appeals process given the
2 testimony and evidence presented by Defendants.

3 Lieutenant Speidell, who as a lieutenant assigned to Plaintiff's building during the relevant
4 time frame, testified that grievance forms and pens were available to inmates upon request. Such
5 request could be made during mail call, during appointments, during showers, food, or when staff
6 walked by. Again, there is no evidence that Plaintiff did so.

7 Although Plaintiff contends that he submitted an inmate appeal sometime between September
8 5, 2013 and November 22, 2013, there is no evidence in IATS that Plaintiff did so, nor is there any
9 evidence that Plaintiff appealed the fact that his initial appeal allegedly disappeared. However, there
10 is evidence that in June 2014, after Plaintiff filed the instant action, he submitted a late appeal which
11 was canceled as untimely. However, even if such appeal was properly filed, it cannot and does not
12 serve to exhaust the claims in this action because it was exhausted after Plaintiff filed suit. See
13 McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (An action must be dismissed unless the
14 prisoner exhausted his available administrative remedies before he filed suit, even if the prisoner fully
15 exhausts while the suit is pending.); see also Cano v. Taylor, 739 F.3d 1214, 1220-21 (9th Cir. 2014).

16 Plaintiff has not met his burden to show that the administrative remedies in this case were
17 unavailable, through no fault of his own. Although Plaintiff contends that he submitted an untimely
18 appeal that was not responded to or went missing, Plaintiff has not demonstrated that he took all
19 reasonable and appropriate steps in presenting the grievance in a timely manner, or that any officials'
20 failure to respond to it occurred not through his own fault. There is no evidence that prison officials
21 engaged in any misconduct with respect to Plaintiff's ability to exhaust the administrative remedies.
22 Appeals Coordinator S. Tallerico testified and submitted evidence that KVSP had no record of
23 Plaintiff ever filing a relevant appeal—timely or untimely—and that it had no record of Plaintiff ever
24 following up with his alleged missing appeal. (RT 118-120.) Both Tallerico and Speidell testified that
25 they were unaware of any instances where staff had thrown away an inmate's appeal, as Plaintiff
26 speculates may have happened, and if such conduct occurred it would have subjected the prison
27 official to discipline and/or termination. (RT 108-109, 133.) Plaintiff has not met his burden to show
28 that the administrative remedies in this case were unavailable, through no fault of his own.

There is simply no evidence to find that prison officials thwarted Plaintiff's ability to use the grievance process, and therefore Plaintiff's non-exhaustion of the administrative grievance process is not excused.

## III.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that

1. Plaintiff be deemed to have failed to satisfy the exhaustion requirement based on the evidence presented at the evidentiary hearing; and

2. The instant case be dismissed, without prejudice, for Plaintiff's failure to exhaust the administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 23, 2017**

UNITED STATES MAGISTRATE JUDGE